United States District Court
Southern District of Texas
**ENTERED**
March 10, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODDIE MORGAN, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-00850 |
| | § | |
| GOODMAN MANUFACTURING | § | |
| COMPANY, L.P., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me are competing motions for summary judgment. *See* Dkts. 28 and 36. Having reviewed the motions, the responsive briefing, and the applicable law, I recommend that both motions be **DENIED**, and that this case proceed to trial.

## BACKGROUND

Plaintiff Roddie Morgan ("Morgan") worked as a forklift operator for Goodman Manufacturing, L.P. ("Goodman") for roughly six and a half years—from January 2011 through July 27, 2017. For the first five of those years, Morgan worked for Goodman through a third-party staffing company. In January 2016, Goodman cut out the middleman and hired Morgan to work directly for Goodman.

In May 2016, Goodman declared Morgan eligible for intermittent leave under the Family Medical Leave Act ("FMLA") so that he could provide care for his

adult stepson, who lives with developmental disabilities.[1] As part of his intermittent FMLA leave, Morgan agreed that when he needed to take an FMLA day off, he would (1) "call Cheryl Kennedy, the FMLA Coordinator," and (2) call either his supervisor, Mike Shoemaker, or the company's absentee hotline. Dkt. 29-31 at 2. He agreed that failure to abide by these terms would result in an unexcused absence. On a separate note, Section 12 of Goodman's employee handbook provides the disciplinary consequences for accruing too many unexcused absences and tardies. Under Section 12, employees should receive their first written warning at four unexcused absences or tardies during a rolling 12-month period; a final warning at five absences or six tardies during a rolling 12-month period; and "termination would result when an employee accumulates six absent occurrences or eight tardy occurrences in a rolling 12 month period." Dkt. 29-5 at 3.

On April 13, 2016, Goodman issued Morgan a "Written Warning for Failure to Call the Absentee Hotline." Dkt. 29-6 at 2. Goodman then sent Morgan a "Final Warning" in October 2016. Dkt. 29-7 at 2. This notification stated: "On Wednesday evening October 12, 2016 you texted your immediate supervisor Mike Shoemaker but failed to call the absentee hotline . . . 30 minutes prior to the start of your shift to report that you would be absent today." *Id.* The Final Warning failed to detail

---

[1] Although employers have no obligation to provide employees with FMLA leave until the employee has worked for the employer for more than a year, Goodman credited Morgan for his time spent working for Goodman through the third-party contractor.

any prior violations of the company's absentee or tardiness policy other than a single failure by Morgan to call the absentee hotline in April 2016.

The next time Morgan received a formal notification about any attendance issues was in February 2017. In a February 24, 2017 First Warning, Goodman informed Morgan that he had accrued eight unexcused absences within a rolling 12-month period. Two weeks later, Morgan received a First Warning for accruing eight unexcused tardies within a rolling 12-month period. Although the employee handbook explained that Goodman would provide Morgan with a First Warning at four unexcused absences or tardies within a 12-month period, that company policy was certainly not followed here. Goodman did not issue any Final Warnings to Morgan in 2017 for absenteeism or tardiness.

On July 22, 2017, Morgan suffered injuries to his lower back and hip when he tripped over a bolt protruding from the warehouse floor. Unable to work his scheduled shift on June 24 due to severe pain from the accident, Morgan called Goodman's hotline to let the company know that he would not be reporting to work. Over the next few days, Morgan visited two doctors of his choosing. On July 25, one of those doctors said that he could return to work "TBD after x-ray evaluation by employer doctors." Dkt. 29-17 at 2. Goodman directed Morgan to Next Level Urgent Care where he was seen by Dr. Terence M. Chang on the afternoon of July 25. Dr. Chang provided Goodman with a work status report on the morning of July 26, releasing Morgan to return to work with certain mobility restrictions. Also on July 26, Goodman filed a Texas workers' compensation claim

on Morgan's behalf and placed Morgan on FMLA leave "[b]ecause of a qualifying injury, illness[,] or other qualifying event." Dkt. 38-2 at 1.

Morgan did not report to work on July 26 or 27. He contends that he called the Goodman hotline each day to let the company know that he would be absent from work. Goodman alleges that a company representative called Morgan on July 26 and left Morgan a voicemail "stating [that Goodman] had a light duty position for him and he could come to his regular schedule." Dkt. 29-23 at 3. Morgan testified at his deposition, however, that he never received this call or a voicemail from Goodman. On July 27, Goodman sent Morgan a "Bona Fide Offer of Employment" requesting that Morgan return to work. Dkt. 29-22 at 2. The letter stated that if Morgan failed to sign and return the letter in seven days, Goodman would consider the offer rejected.

Around 5:30 p.m. on the evening of July 27, George Taylor, a Human Resources Manager for Goodman, sought permission to terminate Morgan for failing to return to work on July 26 and 27. Goodman's Director of Human Resources, Mark Clark, approved the termination, noting "George, looks like you've done a good job establishing his reason to be out was not [w]orker's [c]omp—but rather a continuing attendance issue." 29-24 at 2.

The summary judgment evidence shows that Morgan visited a fourth doctor, Dr. Sergio Wong, on August 2—six days after Goodman made the decision to terminate Morgan's employment. Dr. Wong faxed a Work Status Report to Goodman on August 9, saying that Morgan's workplace injury prevented him from

working from July 28 through September. Dr. Wong eventually revised the Work Status Report to reflect that Morgan's workplace injury prevented him from working from July 27 through September 1. From July 27 through late August 2017, Morgan attests that he called the Goodman hotline each day to notify the company that he would not be at work due to his injury. On August 24, Goodman formally terminated Morgan's employment over the telephone.

Morgan originally filed suit against Goodman in state district court in February 2018. Goodman then removed the case to federal court. The First Amended Petition is the live pleading. *See* Dkt. 1-9 at 2. It alleges three claims: (1) Texas Workers' compensation retaliation; (2) FMLA retaliation; and (3) FMLA interference. Both parties have filed motions for summary judgment on Morgan's Texas workers' compensation claim and his FMLA claims. Morgan has also filed a motion for a judgment on the pleadings as to four of Goodman's affirmative defenses.

## SUMMARY JUDGMENT STANDARD

A party should prevail on a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden "of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266,

269–70 (5th Cir. 2015) (quotation omitted). If the nonmoving party bears the burden of production at trial, the party moving for summary judgment "must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017) (quotation omitted). If the movant is successful, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270 (quotation omitted). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," instead the nonmoving party "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (quotations omitted).

In evaluating the party's arguments in favor and against summary judgment, "the court may not undertake to evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes." *Matter of Green*, 968 F.3d 516, 520 (5th Cir. 2020) (quotation omitted). The court "must instead view all facts in favor of the non-moving party," and draw all reasonable inferences in the nonmovant's favor. *Id.* On cross-motions for summary judgment, the court must "review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *A.A. v. Northside Indep. Sch. Dist.*, 951 F.3d 678, 684 (5th Cir. 2020) (quotation omitted).

## SUMMARY JUDGMENT ANALYSIS

**A.    TEXAS WORKERS' COMPENSATION RETALIATION CLAIM**

Morgan first alleges that Goodman retaliated against him in connection with the filing of a workers' compensation claim. Chapter 451 of the Texas Labor Code provides that a "person may not discharge or in any other manner discriminate against an employee because the employee has . . . filed a workers' compensation claim in good faith." TEX. LAB. CODE § 451.001(1). The purpose of this statutory scheme is "to protect persons entitled to benefits under the Workers' Compensation Act and to prevent them from being discharged for filing claims to collect those benefits." *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 312 (Tex. 1997).

Texas courts analyze claims brought under § 451.001(1) using the well-established *McDonnell Douglas* burden shifting framework. *See Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 66 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Under the *McDonnell Douglas* analytical approach, Morgan must first make a *prima facie* case of retaliation. To make a *prima facie* showing of retaliation under § 451, Morgan must show: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the filing of a workers' compensation claim and his termination. *See Cristain v. Hunter Buildings & Mfg., LP*, No. H-16-2462, 2017 WL 2633565, at *5 (S.D. Tex. June 19, 2017); *Cardenas v. Bilfinger TEPSCO, Inc.*, 527 S.W.3d 391, 399 (Tex. App.—Houston [1st Dist.] 2017, no pet.). If Morgan establishes a *prima*

*facie* case, the burden shifts to Goodman to produce evidence that its underlying employment action was based on a legitimate nondiscriminatory reason. *See Williams v. AT & T, Inc.*, No. H-07-0559, 2009 WL 938495, at *16 (S.D. Tex. Apr. 6, 2009). Once Goodman produces a legitimate, nonretaliatory reason for terminating Morgan, the burden shifts back to Morgan "to raise a fact issue as to the employer's retaliatory motive, by either direct or circumstantial evidence." *Id.* If Morgan is successful in raising a fact issue as to the employer's retaliatory motive, summary judgment is inappropriate.

### 1.  Morgan has made a *prima facie* case.

The first two elements of Morgan's *prima facie* case are not in dispute. A workers' compensation claim was filed on Morgan's behalf, and he was subsequently terminated. It is the third element—whether Morgan has shown the necessary causal link—where the rubber meets the road.

Courts on both the state and federal level have recognized that an employee's burden at the *prima facie* stage is not onerous. *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("the 'causal link' required in prong three of the prima facie case for [Title VII] retaliation is not as stringent as the 'but for' standard")*; Tawil v. Cook Children's Healthcare Sys.*, 582 S.W.3d 669, 683 (Tex. App.—Fort Worth 2019, no pet.) ("[W]e impose only a slight burden on the employee to establish a prima facie case in the first step of the burden-shifting process."). At the *prima facie* stage, "the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *United States*

*ex rel. Dyson v. Amerigroup Tex., Inc.*, No. CIV.A. H-03-4223, 2005 WL 2467689, at *3 (S.D. Tex. Oct. 6, 2005) (quotation omitted) (applying *McDonnell Douglas* to retaliation claim under the False Claims Act). To this end, courts routinely hold that an employee meets his *prima facie* burden with proof that the protected activity was followed shortly by an adverse employment action. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (explaining that "temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation" under Title VII); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation" under Title VII.); *Salas v. Fluor Daniel Servs. Corp.*, --- S.W.3d ---, 2020 WL 7711332, at *10 (Tex. App.—Houston [14th Dist.] Dec. 29, 2020, pet. filed) ("Close timing between an employee's protected activity [under Texas Labor Code § 451.001] and the adverse action can provide the causal connection required for a prima facie case." (quotation omitted)); *Tawil*, 582 S.W.3d at 683 (explaining that, under § 451.001, an "employee meets [his] prima facie burden with proof that the protected activity was followed shortly by an adverse employment action," and compiling cases).

The temporal proximity here firmly supports a *prima facie* showing of causation. Morgan suffered his workplace injury on July 22, 2017, Goodman filed the workers' compensation claim on Morgan's behalf on July 26, and Goodman decided to terminate Morgan's employment the very next day. To be clear, just one

day passed between the time the workers' compensation claim was filed and the time Goodman decided to terminate Morgan's employment. Five days passed between Morgan's injury and the time Goodman decided to terminate Morgan's employment. The temporal proximity between Morgan's injury, Goodman's filing of the claim, and Goodman's decision to terminate Morgan easily satisfies the low hurdle to establish a *prima facie* case of retaliation under § 451.001. *See Evans*, 246 F.3d at 354 (finding that a time lapse of 5 days was sufficient to provide causal connection for a *prima facie* case of Title VII retaliation); *Salas*, 2020 WL 7711332, at *10 (finding that a time lapse of 11 days was sufficient to "provide the causal connection required for a prima facie case" of retaliation under § 451.001).

### 2. Goodman has produced a legitimate, non-retaliatory reason for Morgan's termination.

Once Morgan establishes a *prima facie* case of retaliation, the burden shifts to Goodman to "articulate—not prove—a legitimate, non-retaliatory reason" for its actions. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981). *See also Salas*, 2020 WL 7711332, at *4 ("Once the employee establishes a causal link, the burden shifts to the employer to rebut the alleged discrimination by showing there was a legitimate reason behind the discharge." (quotation omitted)). If Goodman "produces any evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action," then Goodman will have carried its burden of production. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quotation omitted). *See also Patrick v. Ridge*, 394 F.3d 311,

315 (5th Cir. 2004) (stating that "the employer need not prove that it was actually motivated by its proffered reason"); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) ("The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." (emphasis omitted)).

Goodman argues that it terminated Morgan because he failed to show up for work on July 26 and 27, 2017, in violation of Goodman's attendance policy. These absences were, according to Goodman, unexcused because medical professionals had examined Morgan and cleared him to return to work. The Fifth Circuit has regularly held that absenteeism is a legitimate, non-retaliatory reason for an employee's termination. *See Trautman v. Time Warner Cable Tex., L.L.C.*, 756 F. App'x 421, 428 (5th Cir. 2018) ("[A]s should go without saying, an employee's failure to show up for work is a legitimate reason for firing her."); *Powers v. Woodlands Religious Cmty. Inc.*, 323 F. App'x 300, 302 (5th Cir. 2009) ("[The employer's] stated reason for [the employee's] termination—absenteeism—is a legitimate nondiscriminatory reason for its decision."); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 335 (5th Cir. 2005) (finding that "a lengthy history of attendance problems" constitutes "a legitimate, nondiscriminatory reason for firing" an employee). Goodman has met its burden.

### 3.  Morgan has established a fact issue as to whether Goodman's legitimate, nondiscriminatory reason for termination is mere pretext.

Once an employer produces a legitimate, nondiscriminatory reason for termination, "the burden shifts back to the plaintiff to raise a fact issue as to the employer's retaliatory motive." *Chollet v. Patterson-UTI Drilling Servs. LP*, No. V-08-27, 2009 WL 4667575, at *11 (S.D. Tex. Dec. 1, 2009). *See also Parker*, 365 S.W.3d at 67 (explaining that the burden reverts "to the employee to produce controverting evidence of a retaliatory motive in order to survive a motion for summary judgment" (quotation omitted)). As plaintiff, Morgan "must demonstrate that [he] would not have been discharged but for [his] assertion of a workers' compensation claim." *Lopez v. Sonic Components, LLC*, No. 3:14-cv-0283-D, 2015 WL 6549583, at *7 (N.D. Tex. Oct. 28, 2015). *See also Williams v. Square D Co.*, No. 3:04-cv-0162-D, 2005 WL 2219237, at * 3 (N.D. Tex. Sept. 13, 2005) ("[T]o survive summary judgment, [plaintiff] must produce controverting evidence of [the employer's] retaliatory motive. Specifically, he must show that he would not have been discharged but for his assertion of a workers' compensation claim.").

Generally, the plaintiff must show "that the employer's asserted reason for the discharge or other adverse employment action was pretextual or challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason." *Parker*, 365 S.W.3d at 67–68 (quotation omitted)). "The ultimate question will be whether the

evidence of a causal link is so strong as to justify a finding that the employer had a retaliatory motive." *Jones v. NRG Tex., LLC*, No. 10-16-00260-CV, 2017 WL 1540690, at *2 (Tex. App.—Waco Apr. 26, 2017, no pet.). "[A]n employee's subjective belief that the employer acted in retaliation for the filing of a claim has no probative force because such beliefs are no more than conclusions." *Tawil*, 582 S.W.3d at 682.

A plaintiff may present evidence of retaliatory motive by either direct or circumstantial evidence. *See Chollet*, 2009 WL 4667575, at *11. Circumstantial evidence showing a link between termination and the filing of a workers' compensation claim generally includes:

> (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.

*Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996) (quotation omitted). Temporal proximity is another factor to be considered in determining whether a causal chain exists between the filing of a workers' compensation claim and a termination. *See Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 590 (5th Cir. 1995) ("Texas courts have frequently looked at the temporal proximity between the protected activity and the adverse employment action for circumstantial evidence of retaliatory motive.").

Here, it is undisputed that Goodman's decision makers, Mark Clark and George Taylor, had knowledge of Morgan's workers' compensation claim at the time they decided to terminate his employment. Indeed, Goodman actually filed the workers' compensation claim on Morgan's behalf. But this fact "standing alone is insufficient to raise a genuine issue of material fact" as to whether Goodman terminated Morgan because of his compensation claim. *Williams*, 2009 WL 938495, at *17 (quotation omitted). To create a fact issue and avoid summary judgment, Morgan must point to something more.

Through his own affidavit, Morgan contends that Goodman had "a relaxed attendance and absence policy" and that "Goodman did not adhere to its own attendance and absence policy." Dkt. 38-4 at 1. Although Goodman argues that "Morgan's affidavit is hearsay, conclusory, and fails to provide evidence of disparate treatment," Dkt. 52 at 17, Morgan's affidavit is supported by other evidence in the summary judgment record creating a factual issue as to whether Goodman failed to abide by its own attendance policies. As discussed above, Section 12 of Goodman's employee handbook sets forth a detailed attendance and tardiness policy. Important to this discussion, the employee handbook provides for a First Warning at four absences or tardies within a rolling 12-month period; a Final Warning at five absences or six tardies within a rolling 12-month period; and termination at six absences or eight tardies within a rolling 12-month period. The policy expressly states that absences or tardies "'roll off' one year after they were accumulated." Dkt. 29-5 at 3.

On February 24, 2017, Goodman sent Morgan a First Warning. Although four unexcused absences are supposed to trigger a First Warning, the February 24, 2017 First Warning referenced eight alleged unexcused absences. Approximately two weeks later, on March 10, 2017, Morgan received a First Warning for tardiness. That First Warning for tardiness referenced eight unexcused tardies within a rolling 12-month period, not the four unexcused occurrences that the employee handbook says will be in a First Warning. Those First Warnings issued in February and March 2017 were the last written warnings Morgan received before his termination in July. Morgan never received a Final Warning in 2017 for absences or tardies. He was simply terminated on July 27, 2017. The internal Goodman email seeking authorization to terminate Morgan confirms Goodman's inability to institute a clear and accurate attendance policy. It noted that Morgan had attendance and punctuality issues in the past, "however due to the untimeliness of the notification by the supervisor he was given written warnings to provide him with an additional opportunity to recover." Dkt. 29-24 at 3. Why Goodman did not follow its own employee handbook and issue both a First Warning and a Final Warning to Morgan before termination is left unanswered by the summary judgment record.

Morgan did receive a Final Warning back on October 13, 2016, for allegedly failing "to call the absentee hotline . . . 30 minutes prior to the start of" his shift. Dkt. 29-7 at 2. But, as already noted, Goodman's policy specifically provides that absences and tardies "roll off" one year after they were accumulated. As such, many

of the absences and tardies taken into consideration as part of the October 13, 2016 Final Warning were no longer "live" by the time Goodman terminated Morgan on July 27, 2017. Indeed, on the date of his firing, Morgan only had six unexcused absences (assuming you count July 27) within a 12-month rolling period, and five unexcused tardies within a 12-month rolling period. *See* Dkts. 29-8 at 2; 29-9 at 1.

Goodman contends that "[t]o the extent Goodman deviated from any of its policies, it was overly generous in failing to terminate Morgan when he reached an unacceptable number of absences and tardies." Dkt. 28 at 20. But the trouble here is that Goodman's decision to accelerate its disciplinary action coincides with Morgan's workplace injury. If Goodman terminated Morgan for failing to report to work on July 27, it did so without ever issuing Morgan a Final Warning—a deviation from its standard company policies. If, on the other hand, Goodman terminated Morgan "for failing to use the call-in line as instructed" in the Final Warning issued in October 2016, Morgan has pointed to other summary judgment evidence that might convince a jury that the reason is pretextual. Morgan has provided telephone records showing that he did call in around 4:30 a.m. on both July 26 and July 27. And a July 27 email exchange between Goodman employees George Taylor and Mark Clark confirms that Morgan "did use the call in line" and "indicated that he was 'too sore' to report to work." Dkt. 29-24 at 2. Morgan has also pointed to summary judgment evidence showing that Goodman reported the workplace accident to its insurance carrier as an "unwitnessed accident" when, in reality, a witness statement had been submitted by Clifton Smith. *See* Dkt. 29-15

16

at 7. In the same vein, Morgan contends that Goodman filed two witness statements allegedly provided by Clifton Smith, one of which was altered. *Compare* Dkt. 38-11, *with* 38-12. Taken together and in the light most favorable to Morgan, these three alleged facts (terminating Morgan based on his failure to call-in, noting the accident as unwitnessed, and producing two conflicting witness statements with potentially conflicting testimony) could lead a reasonable jury to conclude that Goodman's stated reason for termination is false. And while it is true that notifying Goodman's insurance carrier that the injury was the result of an "unwitnessed accident" "could be a mistake, or it could be that the claim examiner was unaware of Mr. Smith's statements," those kinds of disputes and determinations are best reserved for the factfinder. Dkt. 52 at 19–20. At the summary judgment stage, Morgan need only present evidence that raises a genuine issue of material fact.

In sum, Morgan has pointed to summary judgment evidence showing that Goodman knew about his participation in an activity protected by Texas law, and that Goodman terminated his employment shortly thereafter. He has also pointed to summary judgment evidence showing that he may not have been terminated pursuant to the attendance policy, casting doubt on Goodman's legitimate, nondiscriminatory reason for termination. Viewing all the evidence in the light most favorable to Morgan, Goodman's motion for summary judgment on Morgan's workers' compensation retaliation claim should be denied. Because a genuine issue

of material fact remains, Morgan's motion for summary judgment should likewise be denied.[2]

## B.    FMLA

The FMLA entitles employees to take leave for "a serious health condition that makes the employee unable to perform" their duties. 29 U.S.C. § 2612(a)(1)(D). Two types of claims arise under the FMLA: (1) "interference" or "(a)(1)" claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA, and (2) "retaliation" or "(a)(2)" claims in which the employee alleges that the employer discriminated against him for exercising FMLA rights. *See id.* § 2615(a)(1)–(2). Morgan alleges both.

### 1.  FMLA Retaliation

The *McDonnel Douglas* burden-shifting analysis discussed above also applies to FMLA retaliation claims. *See Wheat v. Fla. Parish Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). Under that approach, Morgan must first make a *prima facie* case of retaliation after which Goodman has an opportunity to "articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). Once Goodman produces a nonretaliatory reason for terminating

---

[2] As an aside, it "is highly unusual for a plaintiff in a [retaliation] case to move for summary judgment. One could read hundreds if not thousands of decisions in these cases without coming across one in which a plaintiff moved for summary judgment, much less prevailed." *Day v. City of Baraboo*, No. 06-C-188-C, 2007 WL 5633174, at *6 (W.D. Wis. Jan. 31, 2007).

Morgan, the burden shifts back to Morgan to "show by a preponderance of the evidence that [Goodman's] reason is a pretext for retaliation." *Id.* To make a *prima facie* case of unlawful FMLA retaliation Morgan must show "(1) [he] was protected under the FMLA; (2) [he] suffered an adverse employment action; and (3) the adverse [employment] action was taken *because* [he] took FMLA leave." *Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 210 (5th Cir. 2015). It is undisputed that the first two elements have been satisfied: Morgan was covered by the FMLA on a temporary and continuous basis and he unquestionably suffered an adverse employment action.

As for the causation element, the Supreme Court has held that temporal proximity by itself can establish *prima facie* causation where the proximity is "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (quotation omitted) (collecting cases). Morgan contends that he was terminated while on continuous FMLA leave for his workplace injury. This is sufficient to establish a *prima facie* case of retaliation. *See Leal v. BFT, Ltd. P'ship*, 423 F. App'x 476, 479–80 (5th Cir. 2011) ("Because Leal was terminated during her exercise of FMLA rights, we conclude that the 'temporal proximity' between her FMLA leave and the adverse action was 'very close' and is sufficient to establish the necessary causal link for a prima facie case."). Because Morgan was terminated shortly after Goodman placed him on continuous FMLA leave, Morgan has established a *prima facie* case of FMLA retaliation.

Goodman alleges the same legitimate, nondiscriminatory reason discussed above—that Morgan was terminated for violating Goodman's leave policy. Because Goodman has produced a legitimate, nonretaliatory reason for terminating Morgan, Morgan's motion for summary judgment should be denied. To avoid Goodman's motion for summary judgment, Morgan must point to summary judgment evidence showing that there is a fact issue as to whether Goodman's legitimate reason is merely pretext for unlawful retaliation.

Morgan has pointed to summary judgment evidence that: (1) Goodman declared him eligible for continuous FMLA leave starting July 26 due to his workplace injury; (2) Goodman's George Taylor and Mark Clark both knew that Morgan was on FMLA leave; (3) Morgan's supervisors had expressed frustration with his use of intermittent FMLA as far back as June 2016, or one month after he was declared eligible; and (4) Goodman had allegedly papered his file with attendance infractions based on days protected by his intermittent FMLA (*compare* Dkt. 29-9 at 1, *with* Dkt. 38-20). Viewing this evidence in the light most favorable to Morgan, there is a genuine issue of fact as to whether Goodman's justification for terminating Morgan is merely pretext for unlawful retaliation.

## 2. FMLA INTERFERENCE CLAIM

The FMLA's interference provision makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or . . . attempt to exercise," any substantive FMLA right. 29 U.S.C. § 2615(a)(1). An "interference claim merely requires proof that the employer denied the employee his entitlements under the

FMLA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quotation omitted). Morgan claims Goodman interfered with his FMLA rights by refusing to recognize his July 27, 2017 absence as FMLA leave.

To make a *prima facie* case for FMLA interference, Morgan must show that "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). Elements 1–3 are not in dispute. Goodman argues that Morgan cannot satisfy elements 4 and 5 of the *prima facie* case for FMLA interference.

The fourth element requires Morgan to show that he gave proper notice of his intention to take FMLA leave. The FMLA regulations "explicitly permit[] employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018).

Goodman contends summary judgment is proper on Morgan's FMLA interference claim because he failed to call "Cheryl Kennedy or the hotline to indicate that he was taking FMLA leave" on July 27, 2017. Dkt. 28 at 26. In making this argument, Goodman insists that it instructed Morgan to call Cheryl Kennedy and the absentee hotline in a letter dated May 5, 2016. But that letter is related to Morgan's request for intermittent FMLA leave to care for his stepson. The company issued a different letter to Morgan on July 26, 2017, declaring him

eligible for continuous FMLA leave due to his workplace injury. The July 26 letter does not mention Cheryl Kennedy or the absentee hotline. Instead, it requires Morgan to contact Martha Sommer once per week to provide "a current status of [his] medical condition" and to provide "a current work status report from [his] treating physician at least once a month." Dkt. 38-2 at 1. Goodman does not explain the distinction between these two letters anywhere in its summary judgment briefing. Nonetheless, even if, as Goodman maintains, Morgan was required to call "Cheryl Kennedy or the hotline to indicate that he was taking FMLA leave," there is a factual dispute which precludes summary judgment. Dkt. 28 at 26. Morgan says that he did call the hotline and report that he would be taking FMLA leave. That, alone, is a sufficient reason to deny summary judgment because I am required to view "all the facts and evidence in the light most favorable to" Morgan, the nonmovant. *Ortega Garcia v. United States*, 986 F.3d 513, 524 (5th Cir. 2021). Goodman maintains that the substance of the alleged phone call to the absentee hotline was insufficient, but I am unwilling to make that determination at this time. That is a fact question best left for the jury to decide.

As to element 5, Goodman argues "there is zero evidence Goodman acted in a way to deny Morgan his FMLA rights" because it "placed him on FMLA for a short time [on] July 26, 2017, before it found out he had been released to work." Dkt. 28 at 26. To avoid wading into the factual dispute regarding the sequence of events, I merely note that Goodman's chronology is disputed. Viewing the summary judgment evidence in the light most favorable to Morgan, as I must, there is a

genuine issue of material fact as to whether Goodman denied Morgan the benefits to which he was entitled under the FMLA.

## GOODMAN'S AFFIRMATIVE DEFENSES

Morgan also asks me to dismiss four of Goodman's affirmative defenses as insufficiently pled under Rule 12(c). Because I find that Goodman's Answer provides Morgan notice of the affirmative defenses Goodman intends to raise, I recommend that Morgan's motion be denied.

### A.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits parties to obtain a judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). Although Morgan characterizes his motion as proceeding under Rule 12(c), "a motion to strike defenses under Rule 12(f) is more appropriate when a plaintiff disputes the sufficiency of some of a defendant's defenses." *Franks v. Tyhan, Inc.*, No. H-15-191, 2016 WL 1531752, at *2 (S.D. Tex. Apr. 15, 2016). *See also* 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1369 (3d ed. 2008) ("If a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendant's pleading, he should proceed under Rule 12(f) rather than under Rule 12(c) because the latter leads to the entry of a judgment."). I will, therefore, construe Morgan's Rule 12(c) motion as a Rule 12(f) motion to strike. *See Franks*, 2016 WL 1531752, at *2 (construing a motion to dismiss affirmative defenses under Rule 12(c) as a motion

to strike under Rule 12(f)). Under Rule 12(f), a district court may, at its discretion, "strike from a pleading an insufficient defense." FED. R. CIV. P. 12(f)(1).

A defendant responding to a lawsuit must "state in short and plain terms its defenses to each claim asserted against it" and "affirmatively state any . . . affirmative defense[s]." FED. R. CIV. P. 8(b)(1), (c)(1). In 1999, the Fifth Circuit held that a defendant "must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). The Supreme Court issued its seminal opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) a decade later, establishing that a plaintiff seeking to avoid dismissal must plead "enough facts to a state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To date, the Fifth Circuit has not addressed whether *Twombly* and *Iqbal* effectively overruled *Woodfield*, leaving unsettled the pleading standard a district court should apply to affirmative defenses. *See Franks*, 2016 WL 1531752, at *2. Naturally, the parties dispute which standard should apply here. Morgan contends that the heightened pleading standard established by *Twombly* and *Iqbal* applies to affirmative defenses, while Goodman argues that simple notice pleading will suffice.

Before he was elevated to the Fifth Circuit, Judge Gregg Costa noted that there are four compelling reasons in the aftermath of the *Twombly* and *Iqbal* decisions for applying the fair notice pleading standard to affirmative defenses:

First, *Iqbal* and *Twombly* interpreted the text of Rule 8(a)(2), which requires a statement "showing the pleader is entitled to relief," which differs from Rule 8(c)'s requirement that the defendant "affirmatively state any avoidance or affirmative defense." Second, a defendant only has 21 days to serve an answer. Third, while a motion to dismiss can resolve a case, thereby avoiding discovery entirely, motions to strike only prolong pre-discovery motion practice; as such, raising the standard for pleading affirmative defenses would only encourage more motions to strike.

\* \* \* \*

[Fourth, the] 'insufficient defense' language in Rule 12(f) has traditionally been read to allow challenges to the legal sufficiency of an asserted defense, as opposed to whether the defense contains sufficient factual matter, [as required under Rule 12(b)(6)].

*United States ex rel. Parikh v. Citizens Med. Ctr.*, 302 F.R.D. 416, 418–19 (S.D. Tex. 2014) (Costa, J.) (cleaned up). The authority in this District also weighs heavily in favor of finding that affirmative defenses are subject to a fair notice pleading standard. *See, e.g.*, *Fernandes v. VMOC LLC*, No. H-18-1544, 2018 WL 4901033 (S.D. Tex. Oct. 9, 2018) ("While complaints must satisfy the *Iqbal* and *Twombly* standard, the defendants' answer must only 'identify the affirmative defense in question and provide notice of its basis.'" (quoting *Woodfield,* 193 F.3d at 362)); *Trevino v. RDL Energy Servs., L.P.*, No. H-14-1936, 2016 WL 11477431, at \*4 (S.D. Tex. July 21, 2016) (applying the fair notice pleading standard to any affirmative defenses); *T.R.M. v. GlaxoSmithKline LLC*, No. 4:14-cv-00452, 2015 WL 12551485, at \*2 (S.D. Tex. Aug. 21, 2015) ("Affirmative defenses are not subject to the heightened pleading requirements stated in [*Twombly*].") I will not deviate from this line of authority. Goodman's affirmative defenses need only provide Morgan "enough specificity or factual particularity to give [Morgan] 'fair notice' of

the defense that is being advanced." *T.R.M.*, 2015 WL 12551485, at *2 (quotation omitted).

Striking an affirmative defense is rare and only warranted when a defense "cannot, as a matter of law, succeed under any circumstance." *Moody Nat'l CI Grapevine S., L.P. v. TIC Texas Two 23, L.L.C.*, No. H-19-0711, 2019 WL 5595332, at *2 (S.D. Tex. Oct. 30, 2019) (quotation omitted). "Merely pleading the name of some affirmative defenses may be sufficient to provide the plaintiff with fair notice." *McNeely v. Trans Union LLC*, No H-18-849, 2019 WL 338127, at *2 (S.D. Tex. Jan. 28, 2019).

## B.   DISCUSSION

According to Morgan, Goodman's Answer contains "no facts to support the proposition that: (1) Plaintiff failed to mitigate damages[;] (2) Defendant discovered after-acquired evidence[;] (3) Plaintiff did not engage in protected activity[;] and (4) Defendant had a legitimate, non-discriminatory, non-retaliatory, and non-pretextual reason for" terminating Morgan's employment. Dkt. 36 at 21.

### 1.   Failure to Mitigate

Goodman alleged in its Answer to Morgan's First Amended Petition that Morgan "failed to mitigate his alleged damages." Dkt. 14 at 6. Morgan argues that this affirmative defense should be struck because "Defendant's Answer pleads no facts at all or even remotely suggests that substantially equivalent employment was available." Dkt. 36 at 24.

Having already determined that Goodman need only provide "fair notice" of an affirmative defense, I now conclude that Goodman's defense that Morgan "failed to mitigate his alleged damages" meets that lenient standard. Dkt. 14 at 6. Other courts have found the same language satisfactory. *See Tran v. Thai*, No. H-08-3650, 2010 WL 723633, at *1–2 (S.D. Tex. Mar. 1, 2010) (finding "[t]he plaintiff has failed to mitigate damages, if any, as required by law" sufficient to provide fair notice). Morgan's motion to strike or otherwise dismiss Goodman's failure to mitigate defense should be denied.

### 2. After-Acquired Evidence

Goodman alleged in its Answer that Morgan's "claims for damages are barred, in whole or in part, by the after acquired evidence doctrine." Dkt. 14 at 6. Morgan seeks to strike this affirmative defense because "Goodman's Answer alleged no facts establishing or even suggesting the existence of such wrongdoing by Roddie Morgan, let alone that Goodman discovered it or that it was so severe that he would have been terminated if Goodman learned of it earlier." Dkt. 36 at 25.

"The after-acquired evidence doctrine shields an employer from liability or limits available relief where, after a termination, the employer learns for the first time about employee wrongdoing that would have caused the employer to discharge the employee." *Tomasini v. Mt. Sinai Med. Ctr. of Fla., Inc.*, 315 F. Supp. 2d 1252, 1257 (S.D. Fla. 2004) (quotation omitted); *accord Norman v. Valv Techs., Inc.*, No. H-09-3997, 2011 WL 13318414, at *2 (S.D. Tex. Jan. 19, 2011) (finding on

a Rule 12(f) motion to strike that "questions of fact and law exist[ed] regarding the applicability of this defense" to plaintiff's FLSA retaliation claims).

Neither party has briefed whether the after-acquired evidence doctrine applies in the FMLA or Texas Workers' Compensation context, but Goodman suggests in its summary judgment response that the doctrine could limit Morgan's damages because Goodman would have terminated Morgan when he allegedly submitted a backdated chiropractor's note in February 2018. At this juncture, I need only observe that Goodman's Answer effectively notified Morgan of its intent to raise the after-acquired evidence defense. My hesitance to strike this defense is enough to allow it to remain. *See Moody Nat'l*, 2019 WL 5595332, at *2 ("Striking an affirmative defense is warranted if it cannot, as a matter of law, succeed under any circumstance." (quotation omitted)).

### 3. Protected Activity

Next, Morgan contends that "Defendant's Answer pleads no specific facts setting forth the basis for its supposed contention that Mr. Morgan did not engage in protected activity." Dkt. 36 at 26. Goodman does not respond to this allegation, but I have reservations about whether this issue is truly an affirmative defense or rather an element of Morgan's *prima facie* case. In any case, given the low pleading standard applied to affirmative defenses, Morgan's motion to strike this portion of Goodman's Answer should be denied.

### 4. Mixed-Motives Defense

Goodman's Answer contends that it "had legitimate, non-discriminatory, non-retaliatory, and non-pretextual reasons for" terminating Morgan's employment, and that "Plaintiff would have been terminated even in the absence of any alleged discrimination and/or retaliation on the part of defendant." Dkt. 14 at 7. Morgan argues that these statements fail to provide "specific facts setting forth the basis for its supposed contention that it would have made the same [employment] decision," and requests that Morgan be granted judgment on the pleadings as to Goodman's "mixed-motives defense." Dkt. 36 at 26.

As discussed earlier, Goodman's Answer need only provide Morgan "fair notice" of its intent to raise an affirmative defense. Although a close call, Morgan was able to glean from Goodman's Answer that it intended to raise a mixed-motives defense. That is enough to survive a motion to strike or dismiss.

### CONCLUSION

For the reasons identified above, I recommend that both motions for summary judgment be **DENIED** and that this case proceed to trial on the merits.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 10th day of March 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE